**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **KEVIN MILLER,** | ) | FILED: JUNE 2, 2008 |
| | ) | 08CV3185 TG |
| **Plaintiff,** | ) | JUDGE COAR |
| | ) **Case No.** | MAGISTRATE JUDGE KEYS |
| **v.** | ) | |
| | ) | |
| **INTEGRYS ENERGY GROUP, INC., d/b/a INTEGRYS** | ) | **Jury Trial Requested** |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

**COMPLAINT**

NOW COMES Plaintiff, KEVIN MILLER, by and through his counsel, LISA KANE & ASSOCIATES, P.C., and complaining of Defendant, INTEGRYS ENERGY GROUP, INC., d/b/a INTEGRYS., states as follows:

**PRELIMINARY STATEMENT**

1. This action seeks redress for the violation of rights guaranteed to Plaintiff by the Age Discrimination in Employment Act of 1967 ("ADEA"), as amended, 29 U.S.C. § 621 et seq., and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. Plaintiff seeks mandatory injunctive relief, declaratory relief, and damages to redress Defendant's discriminatory employment practices

**JURISDICTION**

2. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§1343(a)(3) and (4) and 28 U.S.C. § 1331 to secure protection of and to redress deprivation of rights secured by 29 U.S.C. § 621 et seq. and 42 U.S.C. § 2000e et seq. Plaintiff seeks declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

**VENUE**

3. Venue is proper under 28 U.S.C. § 1391 (b)(1) and (2).

**PARTIES**

4. Plaintiff, KEVIN MILLER, is a forty-seven (47) year-old male citizen of the United States citizen who resides in Carol Stream, Illinois.

5. Defendant, INTEGRYS ENERGY GROUP, INC., d/b/a INTEGRYS, is corporation properly organized and sanctioned by the laws of the state of Wisconsin. At all times relevant hereto, Defendant has conducted, and continues to conduct, business in the state of Illinois. Defendant is an employer for the purposes of 29 U.S.C. § 630(b) and 42 U.S.C. § 2000e(b) as Defendant has continuously and does now employ more than twenty (20) employees and is engaged in an industry that affects commerce.

**PROCEDURE**

6. Plaintiff filed a Charge of Discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC") on May 6, 2008. The EEOC issued Plaintiff a Notice of Right to Sue on May 14, 2008, which was received on May 16, 2008. The Notice of Right to Sue entitles Plaintiff to initiate a civil action in the appropriate forum within ninety (90) days of the receipt of said Notice. Plaintiff initiated this action within said ninety (90) day period.

**COMMON ALLEGATIONS**

7. Paragraphs one (1) through six (6) are incorporated by reference as if fully set out herein.

8. Plaintiff began his over twenty (20) year tenure of employment with Defendant or one of its predecessors on February 29, 1988 and remained continuously employed with Defendant or

one of its predecessors until the termination of his employment on January 4, 2008.

9. Since beginning his employment with Defendant, Plaintiff has met its legitimate expectations at all relevant times, as evidenced by the longevity of his employment, his multiple promotions including his promotion to supervisory positions, Plaintiff's bonuses earned for his outstanding performance and approximately twenty (20) merit based salary increases.

10. In 2004 Plaintiff was promoted to the position of Group Supervisor in Defendant's call center.

**COUNT I - TITLE VII - GENDER DISCRIMINATION**

11. Paragraphs one (1) through ten (10) are incorporated by reference as if fully set out herein.

12. After Defendant's predecessor was purchased by Wisconsin Power Services, forming Defendant in February 2007, a complete restructuring of Defendant's management occurred, resulting in the replacement of Defendant's Vice President, Executive Manager, and Executive Supervisor with females Mary Boetcher, Kim Hedum ("Manager Hedum"), and Rhonda Hill ("Executive Supervisor Hill") respectively.

13. In approximately August of 2007, Executive Supervisor Hill became Plaintiff's direct supervisor.

14. Since Executive Supervisor Hill became Plaintiff's direct supervisor, Plaintiff became subject to a campaign of discrimination because of his gender, male and became subject to disparate terms and conditions of employment when compared to his similarly situated less experienced female coworkers.

15. In September 2007 Manager Hedum and Executive Supervisor Hill asked Plaintiff

to transfer to Defendant's all female Waukegan office, which necessitated a three (3) hour daily commute. In convincing Plaintiff to accept this transfer, Manager Hedum and Executive Supervisor Hill told Plaintiff that he could have a company car, but after Plaintiff accepted the transfer in writing, Plaintiff was denied a company car, and was instead loaned a company car for two (2) months.

16. At the time Plaintiff was asked to transfer to Defendant's all female Waukegan office, Plaintiff's management level was eliminated, requiring him to work in the same position and have the same authority as less experienced and less qualified females front line supervisors Nicole Cutler ("Supervisor Cutler") and Heidi Evans ("Supervisor Evans"). Prior to Plaintiff's management level being eliminated, Supervisors Cutler and Evans were at a lower management level than Plaintiff.

17. After accepting the transfer to Defendant's all female Waukegan office, Plaintiff was assigned to share the front line call center supervisor position with female Supervisor Cutler.

18. A few weeks after joining Defendant's Waukegan Location, female Supervisor Cutler went on maternity leave, leaving Plaintiff to act as the sole front line call center supervisor at Defendant's Waukegan location.

19. During the course of his twenty (20) year employment with Defendant, Plaintiff had an excellent attendance record, and rarely took a lunch or a break. However, in December 2007, Plaintiff arrived at work late because of the weather. In response, female Executive Supervisor Hill wrongfully accused Plaintiff of engaging in a pattern and practice of leaving work early, coming in late, and taking long lunches.

20. In February 2008, Supervisor Cutler returned from maternity leave in to once again share the front line call center supervisor at Defendant's Waukegan location with Plaintiff. Upon

returning from leave, Executive Supervisor Hill gave Supervisor Cutler flexibility in her work schedule, but Executive Supervisor Hill failed to give Plaintiff similar flexibility in his work schedule.

21. In early March 2008, Plaintiff was told by Executive Supervisor Hill that Plaintiff's assistance was required on a project in Defendant's Chicago office. After Plaintiff began working on this project, his performance was so exemplary that his project leader Pat Keane ("Leader Keane") made several comments to Plaintiff about his knowledge and accuracy.

22. When Plaintiff arrived for the project at Defendant's Chicago office, Plaintiff was prohibited from visiting Defendant's 16th floor, even to greet his coworkers. When Plaintiff complained to Executive Supervisor Hill about being isolated from his coworkers, Hill told Plaintiff that though she was not allowed to ban Plaintiff from the floor, she did not "expect" to see Plaintiff there at all.

23. After Plaintiff complained to Executive Manager Hill, Hill escorted Plaintiff to Defendant's third floor where she led him to female Keri Miller, who would be advising Plaintiff on the project. At this time, Executive Manager Hill instructed Plaintiff in front of Miller to "make sure you email me when you get in in the morning and when you leave at the end of the day." On information and belief, no other supervisor was ever told to check in and out like this in Plaintiff's department.

24. Days after arriving at Defendant's Waukegan location in September 2007, Plaintiff made a key for his office which was identical to the key that all the other female front line supervisors possessed. In March 2008 when Plaintiff was on the special assignment in Chicago, Executive Supervisor Hill called Plaintiff into her office and began screaming at Plaintiff about the

key and demanded that Plaintiff immediately bring the key to her office. After Plaintiff returned the key, Executive Supervisor Hill told Plaintiff "I have nothing more to say to you."

25. On the morning of March 18, 2008, Plaintiff was called into a meeting which included Executive Supervisor Hill and two members of Defendant's Human Resources, Suzan Dombroviak ("HR Dombroviak") and Sam ("HR Sam").

26. During the March 18, 2008 meeting, Plaintiff was blind-sided with four (4) pages of accusations by all three (3) individuals, who bombarded Plaintiff with numerous outrageous and false accusations, such as accusing Plaintiff of using the word "vagina," and giving back and shoulder rubs to Defendant's representatives. In response, Plaintiff denied engaging in any inappropriate touching or using inappropriate language at the workplace.

27. Contrary to the contentions made by Executive Supervisor Hill, HR Dombroviak and HR Sam during the March 18, 2008 meeting, the use of sexually corse language is commonplace at Defendant's Waukegan office amongst its female employees, where common topics of conversation, oftentimes derived from daytime talk shows, include open discussions about breasts and pumping breast milk. Further, until the March 18, 2008 meeting, Plaintiff had never received any complaint about engaging in any inappropriate touching with his coworkers during the entire course of his over twenty (20) year career with Defendant or its predecessors.

28. On March 20, 2008, females HR Dombroviak from Defendant's Human Resources Department, Manager Hedum, and Executive Supervisor Hill called Plaintiff at home, informed Plaintiff that the accusations against him were deemed terminable, and told Plaintiff that he must immediately choose between immediately resigning or be forcibly terminated for the purported reason that Plaintiff "did not exhibit what the new company was looking for in a leader." Given this

option, Plaintiff chose to accept a forced resignation.

29. On information and belief, the purpose of Plaintiff's temporary assignment to Defendant's Chicago office was to manufacture a circumstance for the termination of Plaintiff's employment in order to allow female Supervisor Cutler to replace Plaintiff as the sole front line call center supervisor at Defendant's Waukegan facility upon her return from maternity leave and rid Defendant's Waukegan facility of its only male representative.

30. Any reasons proffered by Defendant for the termination of Plaintiff's employment are pretext for discriminating against Plaintiff on the basis of his gender, male.

31. The aforementioned acts and omissions of Defendant constitute intentional discrimination against Plaintiff on the basis of his gender, male, in violation of the provisions of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.

32. As a direct and proximate result of the above alleged willful and reckless acts or omissions of Defendant, Plaintiff has suffered injury, including, but not limited to, lost and foregone wages and physical and emotional harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, KEVIN MILLER, prays for judgment against Defendant and respectfully requests that this Court:

A. Declare the conduct of Defendant to violate the rights guaranteed to Plaintiff under appropriate Federal Law;

B. Grant a permanent injunction restraining Defendant, its officers, successors, assigns, and all persons in active concert or participation with them, from engaging in any employment practice, which unlawfully discriminates on the basis of gender;

C. Order Defendant to make whole KEVIN MILLER by providing the affirmative relief necessary to eradicate the effects of Defendant's unlawful practices;

D. Grant Plaintiff actual, consequential, compensatory, punitive and any other damages that the Court may deem appropriate against Defendant;

E. Order Defendant to pay lost, foregone, and future wages to KEVIN MILLER;

F. Grant Plaintiff his attorney's fees, costs, disbursements; and

G. Grant Plaintiff such further relief as the Court deems necessary and proper in the public interest.

**COUNT II - ADEA - AGE DISCRIMINATION**

33. Paragraphs one (1) through ten (10) are incorporated by reference as if fully set out herein.

34. In approximately August of 2007, Rhonda Hill ("Executive Supervisor Hill") became Plaintiff's direct supervisor.

35. Since Executive Supervisor Hill became Plaintiff's supervisor, Plaintiff became subject to a campaign of discrimination because of his age, forty-seven (47) and became subject to disparate terms and conditions of employment when compared to his similarly situated less experienced younger coworkers.

36. In September 2007 Executive Manager Kim Hedum ("Manager Hedum") and Executive Supervisor Hill asked Plaintiff to transfer to Defendant's Waukegan office, which necessitated a three (3) hour daily commute. In convincing Plaintiff to accept this transfer, Manager Hedum and Executive Supervisor Hill told Plaintiff that he could have a company car, but after Plaintiff accepted the transfer in writing, Plaintiff was denied a company car, and was instead loaned

a company car for two (2) months.

37. At the time Plaintiff was asked to transfer to Defendant's Waukegan office, Plaintiff's management level was eliminated, requiring him to work in the same position and have the same authority as less experienced and younger front line supervisors Nicole Cutler ("Supervisor Cutler"), who was in her late twenties (20's) and Heidi Evans ("Supervisor Evans") who was in her early thirties (30's). Prior to Plaintiff's management level being eliminated, Supervisors Cutler and Evans were at a lower management level than Plaintiff.

38. After accepting the transfer to Defendant's Waukegan office, Plaintiff was assigned to share the front line call center supervisor position with Supervisor Cutler.

39. A few weeks after joining Defendant's Waukegan Location, female Supervisor Cutler went on maternity leave, leaving Plaintiff to act as the sole front line call center supervisor at Defendant's Waukegan location.

40. During the course of his twenty (20) year employment with Defendant, Plaintiff had an excellent attendance record, and rarely took a lunch or a break. However, in December 2007, Plaintiff arrived at work because of the weather. In response, Executive Supervisor Hill wrongfully accused Plaintiff of engaging in a pattern and practice of leaving work early, coming in late, and taking long lunches.

41. In February 2008, Supervisor Cutler returned from maternity leave in to once again share the front line call center supervisor at Defendant's Waukegan location with Plaintiff. Upon returning from leave, Executive Supervisor Hill gave Supervisor Cutler flexibility in her work schedule, but Executive Supervisor Hill failed to give Plaintiff similar flexibility in his work schedule.

42. In early March 2008, Plaintiff was told by Executive Supervisor Hill that Plaintiff's assistance was required on a project in Defendant's Chicago office. After Plaintiff began working on this project, his performance was so exemplary that his project leader Pat Keane ("Leader Keane") made several comments to Plaintiff about his knowledge and accuracy.

43. When Plaintiff arrived for the project at Defendant's Chicago office, Plaintiff was prohibited from visiting Defendant's 16th floor, even to greet his coworkers. When Plaintiff complained to Executive Supervisor Hill about being isolated from his coworkers, Hill told Plaintiff that though she was not allowed to ban Plaintiff from the floor, she did not "expect" to see Plaintiff there at all.

44. After Plaintiff complained to Executive Manager Hill, Hill escorted Plaintiff to Defendant's third floor where she led him to female Keri Miller, who would be advising Plaintiff on the project. At this time, Executive Manager Hill instructed Plaintiff in front of Miller to "make sure you email me when you get in in the morning and when you leave at the end of the day." On information and belief, no other supervisor was ever told to check in and out like this in Plaintiff's department.

45. Days after arriving at Defendant's Waukegan location in September 2007, Plaintiff made a key for his office which was identical to the key that all the other younger front line supervisors possessed. In March 2008 when Plaintiff was on the special assignment in Chicago, Executive Supervisor Hill called Plaintiff into her office and began screaming at Plaintiff about the key and demanded that Plaintiff immediately bring the key to her office. After Plaintiff returned the key, Executive Supervisor Hill told Plaintiff "I have nothing more to say to you."

46. On the morning of March 18, 2008, Plaintiff was called into a meeting which

included Executive Supervisor Hill and two members of Defendant's Human Resources, Suzan Dombroviak ("HR Dombroviak") and Sam ("HR Sam").

47. During the March 18, 2008 meeting, Plaintiff was blind-sided with four (4) pages of accusations by all three (3) individuals, who bombarded Plaintiff with numerous outrageous and false accusations, such as accusing Plaintiff of using the word "vagina," and giving back and shoulder rubs to Defendant's representatives. In response, Plaintiff denied engaging in any inappropriate touching or using inappropriate language at the workplace.

48. Contrary to the contentions made by Executive Supervisor Hill, HR Dombroviak and HR Sam during the March 18, 2008 meeting, the use of sexually corse language is commonplace at Defendant's Waukegan office amongst its younger employees, where common topics of conversation, oftentimes derived from daytime talk shows, include open discussions about breasts and pumping breast milk. Further, until the March 18, 2008 meeting, Plaintiff had never received any complaint about engaging in any inappropriate touching with his coworkers during the entire course of his over twenty (20) year career with Defendant or its predecessors.

49. On March 20, 2008, HR Dombroviak from Defendant's Human Resources Department, Manager Hedum, and Executive Supervisor Hill called Plaintiff at home, informed Plaintiff that the accusations against him were deemed terminable, and told Plaintiff that he must immediately choose between immediately resigning or be forcibly terminated for the purported reason that Plaintiff "did not exhibit what the new company was looking for in a leader." Given this option, Plaintiff chose to accept a forced resignation.

50. Any reasons proffered by Defendant for the termination of Plaintiff's employment are pretext for discriminating against Plaintiff on the basis of his age, forty-seven (47).

51. The aforementioned acts and omissions of Defendant constitute unlawful and willful discrimination against Plaintiff on the basis of his age, forty-seven (47), in violation of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 et seq.

52. As a direct and proximate result of the above alleged willful and reckless acts or omissions of Defendant, Plaintiff has suffered injury, including, but not limited to, lost and foregone wages and physical and emotional harm.

**PRAYER FOR RELIEF**

Wherefore, Plaintiff, KEVIN MILLER, prays for judgment against Defendant and respectfully requests that this Court:

A. Declare the conduct of the Defendant to violate the rights guaranteed to Plaintiff under appropriate Federal Law;

B. Grant a permanent injunction restraining Defendant, its officers, successors, assigns, and all persons in active concert or participation with them, from engaging in any employment practice, which unlawfully discriminates on the basis of age;

C. Order Defendant to make whole KEVIN MILLER by providing the affirmative relief necessary to eradicate the effects of Defendant's unlawful practices;

D. Grant Plaintiff any actual, consequential, liquidated, , any other damages that the Court may deem appropriate against Defendant;

E. Order Defendant to pay lost, foregone, and future wages to KEVIN MILLER;

F. Grant Plaintiff his attorney's fees, costs, disbursements; and

G. Grant Plaintiff such further relief as the Court deems necessary and proper in the public interest.

**JURY TRIAL DEMAND**

53. Plaintiff requests a jury trial on all issues of fact and law raised by the allegations in this complaint.

Respectfully submitted,
KEVIN MILLER, Plaintiff,

By: s/Lisa Kane
Lisa Kane, Attorney for Plaintiff

Lisa Kane & Associates, P.C.
Attorney for Plaintiff
120 South LaSalle Street
Suite 1420
Chicago, Illinois 60603
(312) 606-0383
Attorney Code No. 06203093

08CV3185 TG
JUDGE COAR
MAGISTRATE JUDGE KEYS

EEOC Form 161-B (3/98)

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

# NOTICE OF RIGHT TO SUE (*ISSUED ON REQUEST*)

To: **Kevin Miller**
**443 Thunderbird Trail**
**Carol Stream, IL 60188**

**CERTIFIED MAIL 7099 3400 0018 8814 9812**

From: **Chicago District Office**
**500 West Madison St**
**Suite 2800**
**Chicago, IL 60661**

☐ *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **440-2008-05419** | **Zelma Gonzalez, Investigator Support Asst** | **(312) 886-4821** |

*(See also the additional information enclosed with this form.)*

NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act (ADA):** This is your Notice of Right to Sue, issued under Title VII and/or the ADA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII or the ADA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

☐ More than 180 days have passed since the filing of this charge.

☒ Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒ The EEOC is terminating its processing of this charge.

☐ The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☒ The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS of your receipt of this Notice.** Otherwise, your right to sue based on the above-numbered charge will be lost.

☐ The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

John P. Rowe 5/14/08

**John P. Rowe,**
**District Director**

(Date Mailed)

Enclosures(s)

cc: **INTEGRYS**

RECEIVED
MAY 21 2008

**Verification**

I, KEVIN MILLER, declare under penalty of perjury that the foregoing is true and correct.

Executed June 2, 2008.

KEVIN MILLER