UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KEVIN MILLER, | ) | |
| | ) | |
| Plaintiff, | ) | CASE NO. 08 CV 3185 |
| | ) | |
| vs. | ) | Judge Coar |
| | ) | Magistrate Judge Keys |
| INTEGRYS BUSINESS SUPPORT, LLC | ) | |
| d/b/a INTEGRYS, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES
TO PLAINITFF'S FIRST AMENDED COMPLAINT**

Defendant, INTEGRYS BUSINESS SUPPORT, LLC, by its attorneys, FRANCZEK SULLIVAN P.C., hereby answers the allegations of the First Amended Complaint as follows:

**PRELIMINARY STATEMENT**

1.      This action seeks redress for the violation of rights guaranteed to Plaintiff by the Age Discrimination in Employment Act of 1967 ("ADEA"), as amended, 29 U.S.C. § 621 et seq., and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. Plaintiff seeks mandatory injunctive relief, declaratory relief, and damages to redress Defendant's discriminatory employment practices.

**ANSWER:**  Defendant admits that Plaintiff seeks redress for alleged violation of his rights under the Age Discrimination in Employment Act of 1967 ("ADEA"), as amended 29 U.S.C. §621 et seq., and Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §2000e et seq, and that he seeks mandatory injunctive and declaratory relief and damages. Defendant denies that it violated the cited statutes, and that Plaintiff is entitled to any relief.

## JURISDICTION

2.Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1343(a)(3) and (4) and 28 U.S.C. § 1331 to secure protection of and to redress deprivation of rights secured by 29 U.S.C. § 621 et seq. and 42 U.S.C. § 2000e et seq. Plaintiff seeks declaratory relief pursuant to 28 U.S.C. §§ 2201 and 222.

**ANSWER:**Defendant admits that this Court has jurisdiction over this action and that Plaintiff brings claims pursuant to the ADEA, as amended, 42 U.S.C. §2000e *et seq*, and Title VII, as amended, 42 U.S.C. §2000e *et seq*. Defendant denies that Plaintiff's claims have any merit and that he is entitled to declaratory relief.

## VENUE

3.Venue is proper under 28 U.S.C. § 1391(b)(1) and (2).

**ANSWER:**Defendant admits the allegations of Paragraph 3.

## PARTIES

4.Plaintiff, KEVIN MILLER, is a forty-seven (47) year old male citizen of the United States citizen who resides in Carol Stream, Illinois.

**ANSWER:**Upon information and belief, Defendant admits the allegations of Paragraph 4.

5.Defendant, INTEGRYS BUSNIESS SUPPORT, LLC, d/b/a INTEGRYS, is corporation properly organized and sanctioned by the laws of the State of Delaware. At all times relevant hereto, Defendant has conducted, and continues to conduct, business in the State of Illinois. Defendant is an employer for the purposes of 29 U.S.C. § 630(b) and 42 U.S.C. 2000e(b) as Defendant has continuously and does now employ more than twenty (20) employees and is engaged in an industry that affects commerce.

**ANSWER:**Defendant admits the allegations of Paragraph 5.

## PROCEDURE

6.Plaintiff filed a Charge of Discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC") on May 6, 2008. The EEOC issued Plaintiff a Notice of Right to Sue on May 14, 2008, which was received on May 16, 2008. The Notice of Right to Sue entitles Plaintiff to initiate a civil action in the appropriate forum within ninety (90) days of the receipt of said Notice. Plaintiff initiated this action within said ninety (90) day period.

**ANSWER:** Defendant admits that Plaintiff filed a charge of discrimination against it with the Equal Employment Opportunity Commission on May 6, 2008, and that the EEOC issued a Notice of Right to Sue with respect to that charge on May 14, 2008, informing Plaintiff of his right to sue within ninety (90) days of receiving the Notice. Defendant admits that the Notice of Right to Sue entitled Plaintiff to initiate a civil action with 90 days of receipt of the Notice and that Plaintiff filed this action within 90 days of receipt of the Notice. Defendant denies the remaining allegations of Paragraph 6.

## COMMON ALLEGATIONS

7. Paragraphs one (1) through six (6) are incorporated by reference as if fully set out herein.

**ANSWER:** Defendant incorporates its answers to Paragraphs 1-6 as if fully set forth herein.

8. Plaintiff began his over twenty (20) year tenure of employment with Defendant or one of its predecessors on February 29, 1988 and remained continuously employed with Defendant or one of its predecessors until the termination of his employment on January 4, 2008.

**ANSWER:** Defendant admits that Plaintiff was employed by it or one of its predecessor companies from February 16, 1998, until he resigned his employment on March 20, 2008. Defendant denies the remaining allegations of Paragraph 8.

9. Since beginning his employment with Defendant, Plaintiff has met its legitimate expectations at all relevant times, as evidenced by the longevity of his employment, his multiple promotions including his promotion to supervisory positions, Plaintiff's bonuses earned for his outstanding performance and approximately twenty (20) merit based salary increases.

**ANSWER:** Defendant admits that Plaintiff held a supervisory position in the customer service call center in its Waukegan office at the time he resigned his employment on March 20, 2008, and that at certain times during the course of his employment, he was awarded promotions, bonuses and merit increases. Defendant denies the remaining allegations of Paragraph 9.

379006.1

10. In 2004 Plaintiff was promoted to the position of Group Supervisor in Defendant's call center.

**ANSWER:** Defendant admits the allegations contained in Paragraph 10.

## COUNT I – TITLE VII – GENDER DISCRIMINATION

11. Paragraphs one (1) through ten (10) are incorporated by reference as if fully set out herein.

**ANSWER:** Defendant incorporates its answers to Paragraphs 1-10 as if fully set forth herein.

12. After Defendant's predecessor was purchased by Wisconsin Power Services, forming Defendant in February 2007, a complete restructuring of Defendant's management occurred, resulting in the replacement of Defendant's Vice President, Executive Manager, and Executive Supervisor with females Mary Boetcher, Kim Hedum ("Manager Hedum"), and Rhonda Hill ("Executive Supervisor Hill") respectively.

**ANSWER:** Defendant admits that it was formed as a result of the merger of WPS Resources Corporation and Peoples Energy Corporation in February 2007, that certain organizational changes occurred after the merger, and that Boettcher (Vice President), Hedum (Manager, Residential Customer Care), and Hill (Residential Call Center Senior Leader) are female. Defendant denies the remaining allegations in Paragraph 12.

13. In approximately August of 2007, Executive Supervisor Hill became Plaintiff's direct supervisor.

**ANSWER:** Defendant admits that Rhonda Hill, Residential Call Center Senior Leader, became Plaintiff's direct supervisor in or about August 2007. Defendant denies the remaining allegations of Paragraph 13.

14. Since Executive Supervisor Hill became Plaintiff's direct supervisor, Plaintiff became subject to a campaign of discrimination because of his gender, male and became subject to disparate terms and conditions of employment when compared to his similarly situated less experienced female coworkers.

**ANSWER:** Defendant denies the allegations of Paragraph 14.

4

15. In September 2007 Manager Hedum and Executive Supervisor Hill asked Plaintiff to transfer to Defendant's all female Waukegan office, which necessitated a three (3) hour daily commute. In convincing Plaintiff to accept this transfer, Manager Hedum and Executive Supervisor Hill told Plaintiff that he could have a company car, but after Plaintiff accepted the transfer in writing, Plaintiff was denied a company car, and was instead loaned a company car for two (2) months.

**ANSWER:** Defendant admits that in or about August 2007, Plaintiff was offered a transfer to the customer service call center in Waukegan; that he expressed a concern that accepting such a transfer would result in increased commuting costs; that he requested the use of a company car; that he was offered a salary increase to offset these increased commuting costs, and the use of a company "pool car" for a short time until his raise came through, at which time he would be expected to relinquish the company car and buy a car for himself; and that he was told that if he elected not to accept the transfer, he could remain at the call center in Chicago at his existing salary. Plaintiff ultimately decided to accept the transfer and increased salary. Defendant further admits that at the time he was offered the transfer, all employees in the Waukegan call center were female. Defendant denies the remaining allegations of Paragraph 15.

16. At the time Plaintiff was asked to transfer to Defendant's all female Waukegan office, Plaintiff's management level was eliminated, requiring him to work in the same position and have the same authority as less experienced and less qualified females front line supervisors Nicole Cutler ("Supervisor Cutler") and Heidi Evans ("Supervisor Evans"). Prior to Plaintiff's management level being eliminated, Supervisors Cutler and Evans were at a lower management level than Plaintiff.

**ANSWER:** Defendant admits that at the time Plaintiff was asked to transfer to Waukegan, his management level was eliminated due to a post-merger reorganization. Defendant further admits that subsequent to his transfer, both he and Cutler worked as Call Center Team Leaders in the Waukegan call center. Defendant denies the remaining allegations of Paragraph 16.

17. After accepting the transfer to Defendant's all female Waukegan office, Plaintiff was assigned to share the front line call center supervisor position with female Supervisor Cutler.

**ANSWER:** Defendant admits that Plaintiff and Nicole Cutler, who is female, were both supervisors in the customer service call center in Waukegan, and that all of the employees in that call center were female other than Plaintiff. Defendant denies the remaining allegations of Paragraph 17.

18. A few weeks after joining Defendant's Waukegan Location, female Supervisor Cutler went on maternity leave, leaving Plaintiff to act as the sole front line call center supervisor at Defendant's Waukegan location.

**ANSWER:** Defendant admits that Nicole Cutler (female) went on maternity leave in November 2007 and returned from leave in February 2008. During her absence, Plaintiff was the only Call Center Team Leader in the customer service call center in Waukegan. Defendant denies the remaining allegations of Paragraph 18.

19. During the course of his twenty (20) year employment with Defendant, Plaintiff had an excellent attendance record, and rarely took a lunch or a break. However, in December 2007, Plaintiff arrived at work late because of the weather. In response, female Executive Supervisor Hill wrongfully accused Plaintiff of engaging in a pattern and practice of leaving work early, coming in late, and taking long lunches.

**ANSWER:** Defendant admits that Plaintiff was employed by Defendant or one of its predecessor companies for twenty (20) years prior to resigning his employment and that Plaintiff's direct supervisor in December 2007, Rhonda Hill, is female. Defendant further admits that Hill counseled Plaintiff and Cutler not to leave the call center unattended. Defendant denies the remaining allegations of Paragraph 19.

20. In February 2008, Supervisor Cutler returned from maternity leave in to once again share the front line call center supervisor at Defendant's Waukegan location with Plaintiff. Upon returning from leave, Executive Supervisor Hill gave Supervisor Cutler flexibility in her work schedule, but Executive Supervisor Hill failed to give Plaintiff similar flexibility in his work schedule.

**ANSWER:** Defendant admits that Nicole Cutler returned from maternity leave in February 2008 and that Plaintiff and Cutler were both Call Center Team Leaders in the customer service call center in Waukegan. Defendant denies the remaining allegations of Paragraph 20.

379006.1

21. In early March 2008, Plaintiff was told by Executive Supervisor Hill that Plaintiff's assistance was required on a project in Defendant's Chicago office. After Plaintiff began working on this project, his performance was so exemplary that his project leader Pat Keane ("Leader Keane") made several comments to Plaintiff about his knowledge and accuracy.

**ANSWER:** Defendant admits that on or about March 10, 2008, Plaintiff was told by Rhonda Hill that he was needed to work on a project in Defendant's Chicago office. Defendant denies the remaining allegations of Paragraph 21.

22. When Plaintiff arrived for the project at Defendant's Chicago office, Plaintiff was prohibited from visiting Defendant's 16th floor, even to greet his coworkers. When Plaintiff complained to Executive Supervisor Hill about being isolated from his coworkers, Hill told Plaintiff that though she was not allowed to ban plaintiff from the floor, she did not "expect" to see Plaintiff there at all.

**ANSWER:** Defendant admits that Hill told Plaintiff not to visit the 16th floor, as the project he was working on did not require him to be there. Defendant denies the remaining allegations of Paragraph 22.

23. After Plaintiff complained to Executive Manager Hill, Hill escorted Plaintiff to Defendant's third floor where she led him to female Keri Miller, who would be advising Plaintiff on the project. At this time, Executive Manager Hill instructed Plaintiff in front of Miller to "make sure you email me when you get in in the morning and when you leave at the end of the day." On information and belief, no other supervisor was ever told to check in and out like this in Plaintiff's department.

**ANSWER:** Defendant admits that Plaintiff was assigned to work on a project located on the third floor of Defendant's Chicago office and that Keri Miller (female) was to advise him on the project. Defendant further admits that Hill told him that because he would be working independently without direct supervision and indeed, would be located on a different elevator bank than her office was located, he should send emails to her when he arrived and when he departed. Defendant denies the remaining allegations of Paragraph 23.

24. Days after arriving at Defendant's Waukegan location in September 2007, Plaintiff made a key for his office which was identical to the key that all the other female front line supervisors possessed. In March 2008 when Plaintiff was on the special assignment in Chicago, Executive Supervisor Hill called Plaintiff into her office and began screaming at Plaintiff about the key and demanded that Plaintiff immediately bring the key to her office.

7

379006.1

After Plaintiff returned the key, Executive Supervisor Hill told Plaintiff "I have nothing more to say to you."

**ANSWER:** Defendant admits that Plaintiff made a key for the Waukegan facility without proper authorization and that on or about March 11, 2008, Hill discovered that he had the key and asked him to turn it in to her. Defendant denies the remaining allegations of Paragraph 24.

25. On the morning of March 18, 2008, Plaintiff was called into a meeting which included Executive Supervisor Hill and two members of Defendant's Human Resources, Suzan Dombroviak ("HR Dombroviak") and Sam ("HR Sam").

**ANSWER:** Defendant admits that on the morning of March 18, 2008, Plaintiff was called into a meeting with Rhonda Hill and two members of Defendant's Human Resources Department, Suzan Dombroviak, HR Business Consultant, and Sam Facey, Labor and Employee Relations Leader. Defendant denies the remaining allegations of Paragraph 25.

26. During the March 18, 2008 meeting, Plaintiff was blind-sided with four (4) pages of accusations by all three (3) individuals, who bombarded Plaintiff with numerous outrageous and false accusations, such as accusing Plaintiff of using the word "vagina," and giving back and shoulder rubs to Defendant's representatives. In response, Plaintiff denied engaging in any inappropriate touching or using inappropriate language at the workplace.

**ANSWER:** Defendant admits that during the March 18, 2008 meeting, Plaintiff was asked a series of questions regarding complaints by others that he had inappropriately touched employees at work, including rubbing their shoulders, and that he had used inappropriate language at work, including reporting to his subordinates that an absent employee had been to the doctor and her "vagina was fine," among other misconduct. Defendant denies the remaining allegations of Paragraph 26.

27. Contrary to the contentions made by Executive Supervisor Hill, HR Dombroviak and HR Sam during the March 18, 2008 meeting, the use of sexually corse [sic] language is commonplace at Defendant's Waukegan office amongst its female employees, where common topics of conversation, oftentimes derived from daytime talk shows, include open discussions about breasts and pumping breast milk. Further, until the March 18, 2008 meeting, Plaintiff had never received any complaint about engaging in any inappropriate touching with his coworkers during the entire course of his over twenty (20) year career with Defendant or its predecessors.

379006.1

**ANSWER:** Defendant admits that it is unaware of any complaint about Plaintiff inappropriately touching his subordinates prior to March 2008, but denies the remaining allegations of Paragraph 27.

28. On March 20, 2008, females HR Dombroviak from Defendant's Human Resources Department, Manager Hedum, and Executive Supervisor Hill called Plaintiff at home, informed Plaintiff that the accusations against him were deemed terminable, and told Plaintiff that he must immediately choose between immediately resigning or be forcibly terminated for the purported reason that Plaintiff "did not exhibit what the new company was looking for in a leader." Given this option, Plaintiff chose to accept a forced resignation.

**ANSWER:** Defendant admits that on March 20, 2008, Suzan Dombroviak, Kimberly Hedum, and Rhonda Hill called Plaintiff at home, informed him that his conduct had violated company policy, and offered him the opportunity to resign. He was advised that if he chose not to resign, he would be terminated. Plaintiff elected to resign. Defendant denies the remaining allegations of Paragraph 28.

29. On information and belief, the purpose of Plaintiff's temporary assignment to Defendant's Chicago office was to manufacture a circumstance for the termination of Plaintiff's employment in order to allow female Supervisor Cutler to replace Plaintiff as the sole front line call center supervisor at Defendant's Waukegan facility upon her return from maternity leave and rid Defendant's Waukegan facility of its only male representative.

**ANSWER:** Defendant denies the allegations of Paragraph 29.

30. Any reasons proffered by Defendant for the termination of Plaintiff's employment are pretext for discriminating against Plaintiff on the basis of his gender, male.

**ANSWER:** Defendant denies the allegations of Paragraph 30.

31. The aforementioned acts and omissions of Defendant constitute intentional discrimination against Plaintiff on the basis of his gender, male, in violation of the provisions of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.

**ANSWER:** Defendant denies the allegations of Paragraph 31.

32. As a direct and proximate result of the above alleged willful and reckless acts or omissions of Defendant, Plaintiff has suffered injury, including, but not limited to, lost and foregone wages and physical and emotional harm.

**ANSWER:** Defendant denies the allegations of Paragraph 32.

379006.1

## COUNT II – ADEA – AGE DISCRIMINATION

33.     Paragraphs one (1) through ten (10) are incorporated by reference as if fully set out herein.

**ANSWER:**     Defendant incorporates its answers to Paragraphs 1-10 as if fully set forth herein.

34.     In approximately August of 2007, Rhonda Hill ("Executive Supervisor Hill" became Plaintiff's direct supervisor.

**ANSWER:**     Defendant admits that Rhonda Hill, Residential Call Center Senior Leader, became Plaintiff's direct supervisor in or about August 2007.  Defendant denies the remaining allegations of Paragraph 34.

35.     Since Executive Supervisor Hill became Plaintiff's supervisor, Plaintiff became subject to a campaign of discrimination because of his age, forty-seven (47) and became subject to disparate terms and conditions of employment when compared to his similarly situated less experienced younger coworkers.

**ANSWER:**     Defendant denies the allegations of Paragraph 35.

36.     In September 2007 Executive Manager Kim Hedum ("Manager Hedum") and Executive Supervisor Hill asked Plaintiff to transfer to Defendant's Waukegan office, which necessitated a three (3) hour daily commute.  In convincing Plaintiff to accept this transfer, Manager Hedum and Executive Supervisor Hill told Plaintiff that he could have a company car, but after Plaintiff accepted the transfer in writing Plaintiff was denied a company car, and was instead loaned a company car for two (2) months.

**ANSWER:**     Defendant admits that in or about August 2007, Plaintiff was offered a transfer to the customer service call center in Waukegan; that he expressed a concern that accepting such a transfer would result in increased commuting costs; that he requested the use of a company car; that he was offered a salary increase to offset these increased commuting costs, and the use of a company "pool car" for a short time until his raise came through, at which time he would be expected to relinquish the company car and buy a car for himself; and that he was told that if he elected not to accept the transfer, he could remain at the call center in Chicago at his existing salary.  Plaintiff ultimately decided to accept the transfer and increased salary. Defendant denies the remaining allegations of Paragraph 36.

37. At the time Plaintiff was asked to transfer to Defendant's Waukegan office, Plaintiff's management level was eliminated, requiring him to work in the same position and have the same authority as less experienced and younger front line supervisors Nicole Cutler ("Supervisor Cutler"), who was in her late twenties (20's) and Heidi Evans ("Supervisor Evans") who was in her early thirties (30's). Prior to Plaintiff's management level being eliminated, Supervisors Cutler and Evans were at a lower management level than Plaintiff.

**ANSWER:** Defendant admits that at the time Plaintiff was asked to transfer to Waukegan, his management level was eliminated due to a post-merger reorganization. Defendant further admits that subsequent to his transfer, both he and Cutler worked as Call Center Team Leaders in the Waukegan call center. Defendant denies the remaining allegations of Paragraph 37.

38. After accepting the transfer to Defendant's Waukegan office, Plaintiff was assigned to share the front line call center supervisor position with Supervisor Cutler.

**ANSWER:** Defendant admits that Plaintiff and Nicole Cutler were both supervisors in the customer service call center in Waukegan. Defendant denies the remaining allegations of Paragraph 38.

39. A few weeks after joining Defendant's Waukegan Location, female Supervisor Cutler went on maternity leave, leaving plaintiff to act as the sole front line call center supervisor at Defendant's Waukegan location.

**ANSWER:** Defendant admits that Nicole Cutler (female) went on maternity leave in November 2007 and returned from leave in February 2008. During her absence, Plaintiff was the only Call Center Team Leader in the customer service call center in Waukegan. Defendant denies the remaining allegations of Paragraph 39.

40. During the course of his twenty (20) year employment with Defendant, Plaintiff had an excellent attendance record, and rarely took a lunch or a break. However, in December 2007, Plaintiff arrived at work late because of the weather. In response, Executive Supervisor Hill wrongfully accused Plaintiff of engaging in a pattern and practice of leaving work early, coming in late, and taking long lunches.

**ANSWER:** Defendant admits that Plaintiff was employed by Defendant or one of its predecessor companies for twenty (20) years prior to resigning his employment and that Plaintiff's direct supervisor in December 2007 was Rhonda Hill. Defendant further admits that

11

Hill counseled Plaintiff and Cutler not to leave the call center unattended. Defendant denies the remaining allegations of Paragraph 40.

41. In February 2008, Supervisor Cutler returned from maternity leave in to once again share the front line call center supervisor at Defendant's Waukegan location with Plaintiff. Upon returning from leave, Executive Supervisor Hill gave Supervisor Cutler flexibility in her work schedule, but Executive Supervisor Hill failed to give Plaintiff similar flexibility in his work schedule.

**ANSWER:** Defendant admits that Nicole Cutler returned from maternity leave in February 2008 and that Plaintiff and Cutler were both Call Center Team Leaders in the customer service call center in Waukegan. Defendant denies the remaining allegations of Paragraph 41.

42. In early March 2008, Plaintiff was told by Executive Supervisor Hill that Plaintiff's assistance was required on a project in Defendant's Chicago office. After Plaintiff began working on this project, his performance was so exemplary that his project leader Pat Keane ("Leader Keane") made several comments to Plaintiff about his knowledge and accuracy.

**ANSWER:** Defendant admits that in or about early March 2008, Plaintiff was told by Rhonda Hill that he was needed to work on a project in Defendant's Chicago office. Defendant denies the remaining allegations of Paragraph 42.

43. When Plaintiff arrived for the project at Defendant's Chicago office, Plaintiff was prohibited from visiting Defendant's 16th floor, even to greet his coworkers. When Plaintiff complained to Executive Supervisor Hill about being isolated from his coworkers, Hill told Plaintiff that though she was not allowed to ban plaintiff from the floor, she did not "expect" to see Plaintiff there at all.

**ANSWER:** Defendant admits that Hill told Plaintiff not to visit the 16th floor, as the project he was working on did not require him to be there. Defendant denies the remaining allegations of Paragraph 43.

44. After Plaintiff complained to Executive Manager Hill, Hill escorted Plaintiff to Defendant's third floor where she led him to female Keri Miller, who would be advising Plaintiff on the project. At this time, Executive Manager Hill instructed Plaintiff in front of Miller to "make sure you email me when you get in in the morning and when you leave at the end of the day." On information and belief, no other supervisor was ever told to check in and out like this in Plaintiff's department.

**ANSWER:**   Defendant admits that Plaintiff was assigned to work on a project located on the third floor of Defendant's Chicago office and that Keri Miller (female) was to advise him on the project. Defendant further admits that Hill told him that because he would be working independently without direct supervision and indeed, would be located on a different elevator bank than her office was located, he should send emails to her when he arrived and when he departed. Defendant denies the remaining allegations of Paragraph 44.

45. Days after arriving at Defendant's Waukegan location in September 2007, Plaintiff made a key for his office which was identical to the key that all the other female front line supervisors possessed. In March 2008 when Plaintiff was on the special assignment in Chicago, Executive Supervisor Hill called Plaintiff into her office and began screaming at Plaintiff about the key and demanded that Plaintiff immediately bring the key to her office. After Plaintiff returned the key, Executive Supervisor Hill told Plaintiff "I have nothing more to say to you."

**ANSWER:**   Defendant admits that Plaintiff made a key for the Waukegan facility without proper authorization and that on or about March 11, 2008, Hill discovered that he had the key and asked him to turn it in to her. Defendant denies the remaining allegations of Paragraph 45.

46. On the morning of March 18, 2008, Plaintiff was called into a meeting which included Executive Supervisor Hill and two members of Defendant's Human Resources, Suzan Dombroviak ("HR Dombroviak") and Sam ("HR Sam").

**ANSWER:**   Defendant admits that on the morning of March 18, 2008, Plaintiff was called into a meeting with Rhonda Hill and two members of Defendant's Human Resources Department, Suzan Dombroviak, HR Business Consultant, and Sam Facey, Labor and Employee Relations Leader. Defendant denies the remaining allegations of Paragraph 46.

47. During the March 18, 2008 meeting, Plaintiff was blind-sided with four (4) pages of accusations by all three (3) individuals, who bombarded Plaintiff with numerous outrageous and false accusations, such as accusing Plaintiff of using the word "vagina," and giving back and shoulder rubs to Defendant's representatives. In response, Plaintiff denied engaging in any inappropriate touching or using inappropriate language at the workplace.

**ANSWER:**   Defendant admits that during the March 18, 2008 meeting, Plaintiff was asked a series of questions regarding complaints by others that he had inappropriately touched employees

13

at work, including rubbing their shoulders, and that he had used inappropriate language at work, including reporting to his subordinates that an absent employee had been to the doctor and her "vagina was fine," among other misconduct  Defendant denies the remaining allegations of Paragraph 47.

48.    Contrary to the contentions made by Executive Supervisor Hill, HR Dombroviak and HR Sam during the March 18, 2008 meeting, the use of sexually corse [sic] language is commonplace at Defendant's Waukegan office amongst its younger employees, where common topics of conversation, oftentimes derived from daytime talk shows, include open discussions about breasts and pumping breast milk.  Further, until the March 18, 2008 meeting, Plaintiff had never received any complaint about engaging in any inappropriate touching with his coworkers during the entire course of his over twenty (20) year career with Defendant or its predecessors.

**ANSWER:**    Defendant admits that it is unaware of any complaint about Plaintiff inappropriately touching his subordinates prior to March 2008, but denies the remaining allegations of Paragraph 48.

49.    On March 20, 2008, HR Dombroviak from Defendant's Human Resources Department, Manager Hedum, and Executive Supervisor Hill called Plaintiff at home, informed Plaintiff that the accusations against him were deemed terminable, and told Plaintiff that he must immediately choose between immediately resigning or be forcibly terminated for the purported reason that Plaintiff "did not exhibit what the new company was looking for in a leader."  Given this option, Plaintiff chose to accept a forced resignation.

**ANSWER:**    Defendant admits that March 20, 2008, Suzan Dombroviak, Kimberly Hedum, and Rhonda Hill called Plaintiff at home, informed him that his conduct had violated company policy, and offered him the opportunity to resign.  He was advised that if he chose not to resign, he would be terminated.  Plaintiff elected to resign.  Defendant denies the remaining allegations of Paragraph 49.

50.    Any reasons proffered by Defendant for the termination of Plaintiff's employment are pretext for discriminating against Plaintiff on the basis of his age, forty-seven(47).

**ANSWER:**    Defendant denies the allegations of Paragraph 50.

51.    The aforementioned acts and omissions of Defendant constitute unlawful and willful discrimination against Plaintiff on the basis of his age, forty-seven (47), in violation of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 et seq.

**ANSWER:**   Defendant denies the allegations of Paragraph 51.

52. As a direct and proximate result of the above alleged willful and reckless acts or omissions of Defendant, Plaintiff has suffered injury, including, but not limited to, lost and foregone wages and physical and emotional harm.

**ANSWER:**   Defendant denies the allegations of Paragraph 52.

## AFFIRMATIVE DEFENSES

1. Plaintiff cannot recover punitive and/or liquidated damages because Defendant undertook good-faith efforts to comply with the ADEA and Title VII and to prevent discrimination.

2. Upon information and belief, Plaintiff has failed to mitigate his damages and, therefore, any relief is barred. In the alternative, to the extent Plaintiff has mitigated his damages, any relief must be reduced by his earnings, compensation and benefits during the relevant time period.

3. Plaintiff has not satisfied the procedural prerequisites set forth in Title VII and the ADEA to the extent that the allegations in his Amended Complaint are not encompassed within the scope of a timely filed EEOC charge.

Respectfully submitted,

INTEGRYS BUSINESS SUPPORT, LLC

By: s/Lisa A. McGarrity - 06198304
    One of Its Attorneys

Lisa A. McGarrity - 06198304
Staci Ketay Rotman - 06243241
FRANCZEK SULLIVAN P.C.
300 South Wacker Drive, Suite 3400
Chicago, Illinois 60606-6785
(312)986-0300
lam@franczek.com
skr@franczek.com

Dated:  July 8, 2008

379006.1

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that she filed the foregoing **DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINITFF'S FIRST AMENDED COMPLAINT** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following on this 8th day of July, 2008.

>Lisa Kane
>Lisa Kane & Associates, P.C.
>120 South LaSalle Street
>Suite 1420
>Chicago, Illinois 60603

>s/Lisa A. McGarrity - 06198304
>Lisa A. McGarrity

379006.1